# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

U.S. BANK N.A.,

    Plaintiff(s),

v.

SFR INVESTMENTS POOL 1, LLC, et al.,

    Defendant(s).

Case No. 2:16-cv-00576-GMN-NJK

**ORDER**

(Docket Nos. 79, 84, 93)

Plaintiff U.S. Bank and its attorneys at Wright, Finlay & Zak have decided to engage in mass litigation over home foreclosures initiated by homeowners associations. "[W]hen parties choose to undertake mass litigation, they must make the proper preparations for doing so." *Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, Case No. 2:16-cv-2726-RFB-NJK, 2017 U.S. Dist. Lexis 150715, *3 (D. Nev. Sept. 18, 2017). That includes properly staffing cases to ensure that deadlines are met. *Id.* Such was obviously not the case here, as U.S. Bank and its attorneys now acknowledge a "cascading series" of failures to comply with Court-ordered deadlines.

The Court herein addresses those failures in the context of the pending order to show cause, the pending motion to reopen discovery, and the pending motion for summary judgment.

**I.    BACKGROUND**

As noted above, this is one of hundreds of cases being litigated concerning the impact of a home foreclosure initiated by an HOA on the interest in that home by the mortgagor bank. In this particular case, U.S. Bank sued the wrong HOA, a mistake that was discovered with approximately 45 days remaining in

the discovery period. Docket No. 49 (motion to be excused from settlement conference filed by the improperly named HOA on March 16, 2017, identifying "recent[]" discovery of being improperly named); Docket No. 48 at 4 (setting discovery cutoff at May 1, 2017). U.S. Bank did not seek an extension of the discovery deadlines at that time based on the revelation that it sued the wrong HOA.

Given an imminent settlement conference, however, the Court set a hearing to discuss the issue. Docket No. 56. At that hearing held on March 21, 2017, U.S. Bank expressed its intention to seek amendment of its complaint to name the correct HOA. Hearing Tr. (Mar. 21, 2017) at 9:04-9:05 a.m.[1] On April 11, 2017, U.S. Bank filed a stipulation to allow it to file a second amended complaint identifying the correct HOA "within two days of approval of this stipulation" and further that "U.S. Bank shall serve Green Valley South Owners Association No. 1 with a summons and a copy of the Second Amended Complaint within ten (10) days of approval of this stipulation and order." Docket No. 64 at 2. On April 14, 2017, Chief United States District Judge Gloria M. Navarro granted that stipulation, establishing the deadline to file the second amended complaint as April 17, 2017 (as the deadline fell on a Sunday), and establishing the deadline for service to be completed as April 24, 2017. Docket No. 65 at 2. The stipulation did not request an extension of discovery deadlines, and the resulting order did not provide any such extension.

Despite stipulating to the deadlines, U.S. Bank did not file the second amended complaint by the deadline ordered and did not serve the second amended complaint by the deadline ordered. U.S. Bank also never sought an extension of those deadlines. Moreover, U.S. Bank did not seek an extension of the discovery cutoff and, instead, simply allowed it to lapse as scheduled on May 1, 2017. Following the close of discovery, on May 2, 2017, Chief Judge Navarro stayed this case pending resolution of appeals involving relevant legal issues. Docket No. 66.

On November 7, 2017, Chief Judge Navarro lifted the stay and, because discovery had already closed, ordered the filing of dispositive motions within 21 days. Docket No. 77. Defendant SFR filed a

---

[1] By this time, things were already not going well for U.S. Bank and its attorneys. For example, U.S. Bank submitted a settlement brief containing numerous and egregious mistakes, including misidentifying which bank is plaintiff in this case and the basic facts of this case. *See* Docket No. 52. Missteps other than those at the focus of this order continued. *See, e.g.*, Docket No. 67 (violation of order to submit additional settlement statement); Docket No. 97 (failure to provide courtesy copies as required by local rule and by specific Court order).

motion for summary judgment as ordered. Docket No. 79. U.S. Bank did not file a dispositive motion, did not file a request to extend that deadline, and, instead, on the 21st day after that order was issued simply filed its untimely second amended complaint. Docket No. 78.[2,3] Another three weeks later, on December 19, 2017 (*i.e.*, six weeks after the stay was lifted), U.S. Bank then filed a motion to reopen discovery and to reopen the deadline for dispositive motions in light of its untimely second amended complaint. Docket No. 84.[4] Following the filing of Defendant SFR's response to the motion to reopen, the Court further issued an order for U.S. Bank and its attorneys to show cause why they should not be sanctioned in light of their violation of Court-ordered deadlines. Docket No. 93.

## II. IMPOSITION OF SANCTIONS

The Court will first address the outstanding order to show cause. U.S. Bank and its attorneys have created a quagmire. They sued the wrong HOA. They failed to comply with the Court-ordered deadlines (that they had proposed) to sue and serve the right HOA. They allowed the discovery period to expire without seeking relief from the discovery cutoff. They ignored Chief Judge Navarro's order setting a deadline to file dispositive motions without seeking relief from that deadline, and instead filed their untimely second amended complaint without acknowledging its untimeliness or seeking a retroactive

---

[2] U.S. Bank acknowledged months earlier that it knew that its second amended complaint was overdue and that the case could not move forward without the proper HOA being named. *See* Docket No. 68 at 3 ("U.S. Bank has yet to file its Second Amended Complaint . . . Green Valley [HOA] is a necessary and proper party to the action"). U.S. Bank provides no explanation why it waited three weeks until the deadline to file dispositive motions to file its untimely second amended complaint.

[3] Despite U.S. Bank's stipulation and the resulting order from months earlier that required it to effectuate service of the second amended complaint on the new HOA within 10 days, Docket Nos. 64, 65, U.S. Bank served its untimely second amended complaint on the new HOA 20 days after it was filed, *compare* Docket No. 78 (second amended complaint filed on November 28, 2017) *with* Docket No. 87 (summons returned executed showing service on December 18, 2017). Hence, U.S. Bank did not even comply with the envisioned timeframe for completing service of the second amended complaint to which it stipulated and which was thereafter ordered.

[4] U.S. Bank frames its request as one seeking to "extend" deadlines. *See* Docket No. 84. That is not an accurate description. The deadlines at issue have expired, so U.S. Bank is actually seeking to reopen them, a request that is conceptually different and subject to additional required showings. *Cf.* Fed. R. Civ. P. 6(b)(1)(B) (requiring additional showing to reopen a deadline that has expired).

3

extension of the Court-ordered deadline. They waited three more weeks to file a motion to reopen the discovery cutoff and the dispositive motion deadline. They have engaged in this course of conduct at the expense of judicial resources and at the expense of SFR's resources, and have threatened the integrity of the Court's orders.

As a result, the Court ordered U.S. Bank and its attorneys (Edgar Smith, Dana Nitz and Patrick Davis) to show cause why they should not be sanctioned. Docket No. 93. U.S. Bank provided a response, supported by a declaration from Mr. Davis. Docket Nos. 94, 94-1. No declaration was submitted by Mr. Smith or Mr. Nitz. For the reasons discussed below, the Court finds the imposition of sanctions appropriate against Mr. Davis, Mr. Smith, and Mr. Nitz.

A. STANDARDS

"Orders are not suggestions or recommendations, they are directives with which compliance is mandatory." *Gfeller v. Doyne Med. Clinic, Inc.*, Case No. 2:14-cv-01940-JCM-VCF, 2015 WL 5210392, at *8 (D. Nev. Sept. 3, 2015) (citing *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979) and *Weddell v. Stewart*, 261 P.3d 1080, 1085 & n.9 (Nev. 2011)). There are several sources of legal authority by which federal courts enforce their orders. Most pertinent here, Rule 16(f) of the Federal Rules of Civil Procedure requires compliance with any "scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)©. Rule 16(f) is "broadly remedial and its purpose is to encourage forceful judicial management." *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986) (*per curiam*).

Litigants have an "unflagging duty to comply with clearly communicated case-management orders." *Martin Family Trust v. Heco/Nostalgia Enters. Co.*, 186 F.R.D. 601, 604 (E.D. Cal. 1999). Rule 16(f) applies regardless of whether the non-compliance with the court order was intentional. *See, e.g.*, *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001). Similarly, "[i]t is firmly established that sanctions may be imposed for a party's unexcused failure to comply with a Rule 16 order, even if that failure was not made in bad faith." *Hologram USA, Inc. v. Pulse Evolution Corporation*, Case No. 2:14-cv-0772-GMN-NJK, 2016 WL 2757377, at *2 (D. Nev. May 11, 2016) (Navarro, C.J.) (collecting cases).

Courts do not invoke Rule 16(f) to enforce their orders for sport. *Cf. Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 136 F.3d 1241, 1244 (9th Cir. 1988) ("We prefer not to spend time lecturing and cajoling

4

violators into compliance through the imposition of sanctions"). Nonetheless, violations of orders setting deadlines "involve a matter most critical to the court itself: management of its docket and the avoidance of unnecessary delays in the administration of its cases." *Martin Family Trust*, 186 F.R.D. at 603 (quoting *Matter of Sanction of Baker*, 744 F.2d 1440, 1441 (10th Cir. 1984) (*en banc*) (internal quotations omitted)). "Part of the purpose of the sanctioning power–the power at issue here–is to control litigation and preserve the integrity of the judicial process." *Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 594 (8th Cir. 2001). Judges have a responsibility to enforce the directives laid down for the case:

> Rules are rules–and the parties must play by them. In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a [magistrate] judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly escape the foreseeable consequences of noncompliance.

*Legault v. Zambarano*, 105 F.3d 24, 28-29 (1st Cir. 1997) (citation omitted); *see also Rice v. Barnes*, 201 F.R.D. 549, 551 (M.D. Ala. 2001) ("The court fully understands the pressures of practicing law; however, the court cannot allow attorneys to flout deadlines and escape the foreseeable consequences of doing so"). As the Ninth Circuit has emphasized, a court order setting deadlines "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril . . . . Disregard of the order would undermine the court's ability to control its docket . . . and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotations and citations omitted).

When a court determines that Rule 16(f) has been violated, it has broad discretion in fashioning an appropriate sanction. *See, e.g.*, *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1397 (9th Cir. 1993); *see also* Local Rule IA 11-8 (the Court may impose "any and all appropriate sanctions on an attorney" who violates any order). Violations of orders are "neither technical nor trivial," *Martin Family Trust*, 186 F.R.D. at 603, and can have severe ramifications. Rule 16(f) itself provides that courts may issue "any just orders," including those authorized by Rule 37(b)(2)(A)(ii)-(vii), which include the initiation of contempt proceedings and entry of case-dispositive sanctions. *See* Fed. R. Civ. P. 16(f)(1); *see also Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130-33 (9th Cir. 1987) (affirming dismissal sanction). Rule 16(f) also authorizes the payment of the attorneys' fees and costs incurred as a result of the non-compliance with the Court order. *See* Fed. R. Civ. P. 16(f)(2). In addition, while not expressly enumerated, the imposition of

court fines is within the scope of the "just orders" permitted by Rule 16(f). *See, e.g., Nick*, 270 F.3d at 595-96. In determining the appropriate sanction, a primary objective is to deter similar misconduct. *See, e.g., Martin Family Trust*, 186 F.R.D. at 604. The Court also considers, *inter alia*, the resources wasted by the opposing party. *See, e.g.*, Fed. R. Civ. P. 16(f)(2).

### B. Mr. Davis

The day-to-day responsibility for handling this case for U.S. Bank during the relevant period has fallen on Patrick Davis. The basic gist of Mr. Davis' response to the order to show cause is that he had a "misunderstanding . . . as to the requirements of this Court." Docket No. 94 at 2. Mr. Davis also attempts to shift at least part of the blame for his shortcomings onto SFR, indicating that SFR would only agree to short deadlines to file a second amended complaint and that SFR did not point out to Mr. Davis during their communications that he was violating the Court's orders. *Id.* at 3-4.[5] Mr. Davis further indicates that his shortcomings were not willful, but were the result of "inadvertence and inexperience." *Id.* at 4. The Court does not find these excuses sufficient to escape sanctions.

It is a foundational element of our judicial system that attorneys must comply with Court orders. *E.g., Chapman*, 613 F.2d at 197. To the extent an attorney disagrees with an order, his recourse is to seek relief from the issuing Court or through the appropriate appellate channels. *See id.* The same holds true for orders setting deadlines, as "[c]alendars are simply too crowded for parties to treat scheduling orders as optional and to submit required court filings at their own convenience." *Martin Family Trust*, 186 F.R.D. at 603 (internal quotations and citations omitted). If a deadline cannot be met, the proper course is most assuredly not to simply ignore an order. At bottom, that is what Mr. Davis has acknowledged doing in this case. He knew that orders had been issued setting deadlines to file and serve the second amended complaint and to file dispositive motions. <u>Indeed, the first of those orders granted a stipulation with deadlines to which Mr. Davis agreed</u>. For reasons that remain a mystery, he contends that he believed he was not required to comply with those orders. "[I]nadvertence and inexperience" only go so far, and they certainly do not excuse an attorney's asserted misunderstanding of the fundamental premise that orders

---

[5] For example, SFR's counsel responded with "Thank you, Patrick" to an email giving her an update as to U.S. Bank's difficulty in obtaining documents from the correct HOA. Docket No. 95-10 at 3.

6

must be followed.⁶ Moreover, the failure of Mr. Davis to do so here has resulted in wasted judicial resources, wasted resources of SFR, and a delay in this case.

Given the circumstances, the Court finds the imposition of sanctions appropriate. As an initial matter, given Mr. Davis' assertion that he lacks knowledge of the basic rules of this Court, he shall read the Local Rules in their entirety and shall file a declaration so certifying within 14 days of the issuance of this order. Moreover, the Court finds a fine of $200 to be appropriate. While this fine does not fully reflect the effect of Mr. Davis' violations on either the integrity of the Court's docket or the sanctity of Rule 16, that amount of the fine should be sufficient to deter similar misconduct. Lastly, Mr. Davis shall be personally liable to pay for half of SFR's attorneys' fees and costs incurred as a result of the above violations.⁷

### C. Mr. Smith and Mr. Nitz

Mr. Smith and Mr. Nitz have not filed their own response to the Court's order to show cause. Instead, they are apparently content relying on a brief footnote by Mr. Davis that he is to blame for all wrongdoing, as he has day-to-day responsibility for handling this case and Mr. Nitz and Mr. Smith were listed as counsel of record "as a partner and senior litigator." *See, e.g.*, Docket No. 94 at 5 n.1. Such reasoning is misplaced.

As an initial matter, Mr. Nitz and Mr. Smith have effectively waived any objection to the imposition of sanctions by failing to provide meaningful discussion as to why such sanctions are not warranted. *See Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013). Reliance on a footnote in a brief written by an associate that he is entirely to blame is not simply not a sufficient response to an order to show cause why sanctions should not be imposed. *Cf. Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996). Indeed, no legal authority is provided and there is any elaboration of any kind.

---

⁶ Mr. Davis notes that his conduct is less egregious than the conduct in some other cases. *See* Docket No. 94 at 7 (discussing *Malone*, 833 F.2d 128). In *Malone*, the Ninth Circuit addressed the imposition of case-dispositive sanctions. 833 F.2d at 130 ("Dismissal is a harsh penalty and is to be imposed only in extreme circumstances"). So that the record is clear, the possibility of such a severe sanction is not at issue here. *See* Docket No. 93 at 3 n.3 (expressly declining to *sua sponte* consider case-dispositive sanctions).

⁷ The response to the order to show cause essentially concedes that an award of attorneys' fees is appropriate given the circumstances. *See* Docket No. 94 at 8-9. The Court agrees.

At any rate, the Court is unpersuaded that Mr. Nitz and Mr. Smith are exonerated by their apparent wholesale delegation of responsibility to their new associate.[8] Mr. Nitz and Mr. Smith are counsel of record and receive electronic notices of all orders issued in this case. *See, e.g.*, Docket No. 48 (notice of electronic filing sent to, *inter alia*, dnitz@wrightlegal.net and esmith@wrightlegal.net); Docket No. 65 (same); Docket No. 77 (same). It has long been settled that "[t]he fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the litigation." *Hawkins v. Fulton County*, 96 F.R.D. 416, 421 (N.D. Ga. 1982) (quoting *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 348 n.5 (D. Conn. 1981)).[9] "[T]his duty to supervise co-counsel includes the duty to remain aware of all acts and omissions by co-counsel that may materially affect the client's interests." *Id.* As a corollary, an attorney of record does not immunize himself from sanctions by asserting that he has delegated to another attorney his responsibilities to his client and his duties as an officer of the Court. *See id.* at 420-21; *see also Garcia v. Geico Cas. Co.*, Case No. 2:13-cv-731-JCM-NJK, 2014 WL 7474773, at *2, 4 (D. Nev. Jan. 6, 2014) (Mahan, J.) (sanctioning attorney notwithstanding his insistence that he bore no responsibility for the day-to-day handling of the case and was not involved in submitting the particular stipulations at issue); *Cabrera v. New Albertson's, Inc.*, Case No. 2:13-cv-00056-LDG-NJK, 2013 U.S. Dist. Lexis 101497, at *4 (D. Nev. July 19, 2013) (same).

In short, Mr. Nitz and Mr. Smith have responded nonchalantly to the pending order to show cause by relying entirely on a two-sentence, unelaborated footnote unsupported by legal authority. That footnote states only that they are counsel of record but delegated day-to-day responsibility to manage this case to Mr. Davis. *See* Docket No. 94 at 5 n.1. Such delegation does not absolve Mr. Nitz and Mr. Smith. While Mr. Nitz and Mr. Smith may be less culpable for the violations at issue than Mr. Davis, they are by no means blameless and the imposition of sanctions is appropriate. Accordingly, the Court finds that Mr. Nitz and

---

[8] According to Mr. Davis, he began working at Wright, Finlay and Zak on March 13, 2017, and this case was reassigned for him to handle on March 17, 2017. Docket No. 94-1 at ¶ 3, 5.

[9] Wright, Finlay and Zak appears to recognize this duty, as it has in place protocol requiring supervising attorneys to review Court filings. Docket No. 94-1 at ¶ 27; *see also* Nev. R. Prof. Cond., Rule 5.1 (outlining duties of supervising lawyers regarding conduct of subordinate lawyers). For reasons that are left unclear, Mr. Davis did not follow that protocol and it was not enforced by Mr. Nitz or Mr. Smith despite their receipt of electronic notices reflecting filings that were apparently not reviewed.

Mr. Smith should each be sanctioned in a fine of $100. Moreover, Mr. Nitz and Mr. Smith shall each be personally liable for one quarter of SFR's attorneys' fees and costs incurred as a result of the above violations.

### D. U.S. Bank

In addition to the attorneys responsible for violating a court order, the Court may also impose sanctions on the client. *See* Fed. R. Civ. P. 16(f); *see also Pitman v. Brinker Int'l, Inc.*, 216 F.R.D. 481, 487 (D. Ariz. 2003). In this case, there is no indication that U.S. Bank itself was responsible for the above violations. "If the fault lies with the attorneys, that is where the impact of sanction should be lodged." *Baker*, 744 F.2d at 1442. Accordingly, the Court declines to impose sanctions on U.S. Bank.

### E. Conclusion

For the reasons discussed above, the Court hereby imposes a fine of $200 on Mr. Davis, a fine of $100 on Mr. Nitz, and a fine of $100 on Mr. Smith. Those fines are personal to each attorney. Payment of these fines shall be made to the "Clerk, U.S. District Court" within seven days of the issuance of this order. In addition, Mr. Davis, Mr. Nitz, and Mr. Smith shall pay SFR for its attorneys' fees and costs incurred as a result of the above conduct.[10] The Court encourages the parties to confer on an amount to be paid. To the extent they cannot agree, SFR may file a "Motion to Calculate Fees and Costs" that includes proper documentation of the amounts for which it seeks to recover. Mr. Davis shall read the Local Rules in their entirety and shall file a declaration so certifying within 14 days of the issuance of this order. Lastly, the Court takes U.S. Bank and its attorneys at their word that "this situation will never happen again." Docket No. 94 at 9. **The Court cautions U.S. Bank, Mr. Davis, Mr. Nitz, and Mr. Smith that it expects strict compliance with all Court orders and all applicable rules moving forward, and that failure to comply may result in significant sanctions.**

In all other respects, the order to show cause is discharged.

---

[10] Mr. Davis shall pay half those fees and costs; Mr. Nitz and Mr. Smith shall each pay a quarter of those fees and costs.

## III. REOPENING DISCOVERY CUTOFF AND DISPOSITIVE MOTION DEADLINES

Also pending before the Court is U.S. Bank's motion to reopen deadlines. Docket No. 84. It appears that disallowing U.S. Bank from moving forward on its untimely second amended complaint may effectively result in the termination of this case. *See* Docket No. 93 at 3 n.3. The Court has already noted above that no finding has been made that case-dispositive sanctions are appropriate in this case. Moreover, the newly appearing HOA should be permitted an opportunity to conduct discovery. Accordingly, the Court will **REOPEN** discovery and **SET** deadlines as follows:

- Amend pleadings/ Add parties: Closed
- Initial experts: April 2, 2018
- Interim status report: April 2, 2018
- Rebuttal experts: May 2, 2018
- Discovery cutoff: June 1, 2018
- Dispositive motions: July 2, 2018
- Joint proposed pretrial order: July 31, 2018, or 30 days after decision on dispositive motions

Accordingly, the motion to reopen discovery (Docket No. 84) is **GRANTED** as outlined herein. Given the circumstances of this case, the Court is not inclined to grant extensions of these deadlines.

## IV. SFR'S MOTION FOR SUMMARY JUDGMENT

In compliance with Chief Judge Navarro's order, SFR filed its motion for summary judgment on November 28, 2017. Docket No. 79. Although the substance of that motion may not be impacted in significant fashion, the motion addresses U.S. Bank's first amended complaint. *Id.* at 3. Given that the second amended complaint is now the operative complaint, the undersigned has conferred with Chief Judge Navarro and SFR's motion for summary judgment is **DENIED** without prejudice.

## V. CONCLUSION

For the reasons discussed above, the Court hereby **ORDERS** as follows:

- With respect to the order to show cause at Docket No. 93, the Court hereby imposes a fine of $200 on Mr. Davis, a fine of $100 on Mr. Nitz, and a fine of $100 on Mr. Smith. Those fines are personal to each attorney. Payment of these fines shall be made to the "Clerk, U.S. District Court" within seven days of the issuance of this order. In addition, Mr. Davis, Mr.

Nitz, and Mr. Smith shall pay SFR for their attorneys' fees and costs incurred as a result of the above conduct.[11] The Court encourages the parties to confer on an amount of fees and costs to be paid. To the extent they cannot agree, SFR may file a "Motion to Calculate Fees and Costs" that includes proper documentation of the amounts for which it seeks to recover. Mr. Davis shall read the Local Rules in their entirety and shall file a declaration so certifying within 14 days of the issuance of this order. In all other respects, the order to show cause is discharged.

- U.S. Bank's motion to reopen discovery at Docket No. 84 is **GRANTED** as outlined above in Section III.
- SFR's motion for summary judgment at Docket No. 79 is **DENIED** without prejudice.

IT IS SO ORDERED.

Dated: February 2, 2018

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

---

[11] Mr. Davis shall pay half those fees and costs; Mr. Nitz and Mr. Smith shall each pay a quarter of those fees and costs.