# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

U.S. BANK NATIONAL ASSOCIATION,   )
                                  )   Case No.: 2:16-cv-00576-GMN-NJK
      Plaintiff,            )
  vs.                             )   **ORDER**
                                  )
SFR INVESTMENTS POOL 1, LLC, *et al.*, )
                                  )
      Defendants.           )
                                  )

Pending before the Court are the Motions for Summary Judgment, (ECF Nos. 111, 113), filed by Green Valley South Owners Association No. 1 ("HOA") and SFR Investments Pool 1, LLC ("SFR") (collectively "Defendants"). Plaintiff U.S. Bank National Association ("Plaintiff") filed a Response, (ECF No. 120), and Defendants filed Replies, (ECF Nos. 124, 125).

Also before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 112), to which Defendants responded, (ECF Nos. 115, 117), and Plaintiff replied, (ECF No. 112).[1]

For the reasons discussed below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motions for Summary Judgment are **GRANTED**.

# I.    BACKGROUND

This case arises from the non-judicial foreclosure on real property located at 2812 Whisper Lane, Henderson, Nevada 89074 (the "Property"). (*See* Deed of Trust, Ex. 2 to Pl.'s Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 112-2). On October 3, 2006, Judith H. Rhodes

---

[1] Also before the Court is the Motion to Strike, (ECF No. 118), in which SFR requests that the Court disregard Plaintiff's argument and evidence demonstrating that Borrower's payments to HOA extinguished the superpriority lien. (*Id.* 4:10–18). Because the Court concludes below that Plaintiff's theory cannot withstand SFR's Motion for Summary Judgment, SFR's Motion to Strike is **DENIED as moot**.

("Borrower") obtained a loan in the amount of $232,000.00 secured by a deed of trust (the "DOT") recorded on October 10, 2006. (*Id.*). Borrower attained a second loan for $29,000.00 secured by another deed of trust (the "Second DOT") identifying Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary. (*See* Second Deed of Trust, Ex. 3 to Pl.'s MSJ, ECF No. 112-3). Plaintiff gained beneficial interest in the DOT through an assignment recorded on September 26, 2012. (*See* Assignment, Ex. 5 to Pl.'s MSJ, ECF No. 112-5).

Upon Borrower's failure to stay current on her payment obligations, Nevada Association Services, Inc. ("NAS"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of delinquent assessment and a subsequent notice of default and election to sell. (*See* Notice of Delinquent Assessment Lien, Ex. 6 to Pl.'s MSJ, ECF No. 112-6); (Notice of Default, Ex. 7 to Pl.'s MSJ, ECF No. 112-7). Borrower and NAS entered a payment plan under which Borrower would pay down her delinquency over eighteen months in exchange for NAS putting a halt to the foreclosure proceedings. (*See* NAS Records 121–122, Ex. 11 to Pl.'s MSJ, ECF No. 112-11). In July 2012, Borrower ceased making payments and HOA notified Borrower that it would proceed with the foreclosure. (*See* HOA Letter to Borrower, Ex. 3 to HOA's MSJ at 28, ECF No. 111-3).

On October 19, 2012, HOA, through NAS, recorded a notice of foreclosure sale stating that a public auction would be held on November 16, 2012. (*See* Notice of Trustee's Sale, Ex. 8 to Pl.'s MSJ, ECF No. 112-8). On December 14, 2012, HOA sold the Property at the auction to SFR, who recorded the foreclosure deed on December 19, 2012. (*See* Foreclosure Deed, Ex. 9 to Pl.'s MSJ, ECF No. 112-9).

Initially filed on March 15, 2016, (*see* Compl., ECF No. 1), Plaintiff a Second Amended Complaint ("SAC") on November 28, 2017, bringing the following claims against various parties associated with the foreclosure and subsequent sale of the Property: (1) quiet title with a requested remedy of declaratory relief against SFR and HOA; (2) injunctive relief against SFR;

and (3) unjust enrichment against SFR. (*See* SAC ¶¶ 68–95, ECF No. 78). SFR filed an Answer, (ECF No. 83), incorporating by reference the previously asserted counterclaims and crossclaims against Plaintiff and Mortgage Electronic Registration Systems, Inc. ("MERS") including: (1) quiet title; (2) injunctive relief; and (3) slander of title against Plaintiff. (*See* Answer to Pl.'s First Am. Compl., 12:16–20:7, ECF No. 34).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

In its Motion, Plaintiff seeks summary judgment on its quiet title claim asserted against HOA and SFR. (Pl.'s MSJ 27:27–28:1, ECF No. 112). SFR requests summary judgment in its favor on its quiet title claim against Plaintiff and MERS, as well summary judgment on Plaintiff's unjust enrichment claim. (SFR's Mot. Summ. J. ("SFR's MSJ") 27:2–9, ECF No. 113).[2] HOA moves for summary judgment on Plaintiff's quiet title claim. (HOA's Mot. Summ. J. ("HOA's MSJ") 19:14–19, ECF No. 111). The Court begins with Plaintiff and SFR's competing claims for quiet title.

### A. Quiet Title

In Nevada, a quiet title action "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 302 P.3d 1103, 1106 (2013). "A plea to quiet title does not require any particular elements, but 'each party must plead and prove his or her own claim to the property in question' and a 'plaintiff's right to relief therefore depends on superiority of title.'" *Id.* (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir.1992)). The burden of proof rests with the party seeking to quiet title in its favor. *See Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1112 (Nev. 2016).

Plaintiff asserts an entitled to summary judgment on its quiet title claim on the grounds that Borrower tendered payment sufficient to satisfy HOA's superpriority lien, HOA breached the mortgagee protection clause in its CC&Rs, and there was sufficient unfairness in the foreclosure process such that the sale should be set aside. (Pl.'s MSJ 7:20–22:9). HOA argues that Plaintiff's claim fails because HOA disclaims interest in the Property, the foreclosure complied with Nevada law, and there is no evidence of fraud, oppression, or unfairness to

---

[2] SFR has not moved for summary judgment on its slander of title claim against Plaintiff.

warrant invalidating the sale. (HOA's MSJ 8:5–15:24). SFR contends that summary judgment is appropriate in its favor because Plaintiff's claim is time-barred, the foreclosure sale complied with Nevada law, and that Plaintiff, as lien holder, is neither entitled to an equitable remedy nor a right of redemption. (SFR's MSJ 9:9–13:8, 20:23–25:16). Finally, the parties dispute whether the Ninth Circuit's holding in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017), compels the Court to find that Plaintiff's DOT survived the HOA foreclosure sale. (*See* Pl.'s MSJ 22:12–23:6); (HOA's MSJ 17:21–19:12); (SFR's MSJ 9:9–16:17).

### 1. Statute of Limitations

According to SFR, Plaintiff's quiet title claim is time-barred because Plaintiff failed to file its Complaint within the applicable three-year limitations period. (SFR's MSJ 9:17–13:8). SFR reasons that the substance of Plaintiff's claim concerns HOA's failure to comply with NRS Chapter 116. (*Id.* 12:6–14). Therefore, SFR claims, because Nevada law prescribes a three-year limitations period for actions upon liability created by statute, a three-year period applies here. (*Id.* 12:24–13:8).

Contrary to SFR's assertions, an action to quiet title in Nevada is subject to either a four or five-year limitations period, depending upon whether the moving party asserts an ownership or lien interest. *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (2017); *Wilmington Tr., Nat'l Ass'n v. Royal Highlands St. & Landscape Maint. Corp.*, No. 2:18-cv-00245-JAD-PAL, 2018 WL 2741044, at *2 (D. Nev. June 6, 2018); *see also Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1114 (9th Cir. 2016). Here, the foreclosure sale took place on December 14, 2012, and Plaintiff filed its Complaint on March 15, 2016. (*See* Trustee's Deed Upon Sale, Ex. 8 to Pl.'s MSJ, ECF No. 112-9); (*see also* Compl., ECF No. 1). Therefore, because Plaintiff initiated this action less than four years after the sale, Plaintiff's quiet title claim is timely.

## 2. Constitutionality of the Foreclosure

Plaintiff contends that this action is controlled by *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), and under that decision, the foreclosure sale could not have extinguished Plaintiff's DOT consistent with the Due Process Clause of the Fourteenth Amendment. (Pl.'s MSJ 22:12–23:6). HOA and SFR counter that *Bourne Valley* has been superseded and is therefore not a basis for setting aside the foreclosure sale. (HOA's MSJ 17:21–19:12); (SFR's MSJ 9:9–16:17).

In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the petitioner's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority . . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A] [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018). As this Court previously explained, the Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. *See Bank of Am., N.A. v. Falcon Point Ass'n*, No. 2:16-cv-00814-GMN-CWH, 2018 WL 4682317, at *4 (D. Nev. Sept. 28, 2018). Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort . . . undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g, Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017).

In sum, *Bourne Valley*'s holding that NRS Chapter 116 is facially unconstitutional is clearly irreconcilable with the Nevada Supreme Court's subsequent pronouncement. Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent Plaintiff, in the instant Motion, seeks to quiet title based upon *Bourne Valley*, the Court rejects this theory.

### 3. Tender of the Superpriority Portion of HOA's Lien

Plaintiff argues that Borrower's tender of delinquency payments in advance of the foreclosure sale was sufficient to extinguish HOA's superpriority lien and thus preserve Plaintiff's DOT. (Pl.'s MSJ 7:20–10:20). SFR and HOA respond that homeowners cannot satisfy an HOA's superpriority lien as a matter of law, and regardless, Plaintiff has not

demonstrated that Borrower's payments were applied to HOA's superpriority lien. (SFR's Resp. 10:7–19, 15:21–16:5, ECF No. 117); (HOA's Resp. 4:7–5:15, ECF No. 115).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (2014). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Invs.*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings*, LLC, 373 P.3d 66, 70–74 (Nev. 2016). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (2018) (en banc). In addition to full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Plaintiff relies upon the Nevada Supreme Court's decision in *Golden Hill* where the Court held that a homeowner's tender of the full superpriority amount discharged an HOA's superpriority lien and rendered the ensuing foreclosure sale invalid. *See Saticoy Bay LLC 2141 Golden Hill v. JPMorgan Chase Bank*, No. 71246, 408 P.3d 558, 2017 WL 6597154, at *1 (Nev. 2017) (unpublished). In that case, there was "undisputed evidence that the former homeowner made payments sufficient to satisfy the superpriority component of the HOA's lien and that the HOA applied those payments to the superpriority component of the former homeowner's outstanding balance." *Id.* As a result, the lender's deed of trust survived the foreclosure sale. *Id.*

The Nevada Supreme Court has since revisited *Golden Hill* and added an additional limitation to its applicability. In *SFR Invs. Pool 1, LLC v. Wells Fargo Bank*, *N.A.*, No. 70471,

2018 WL 6609670, at *1 (Nev. Dec. 13, 2018) (unpublished), despite the homeowner's undisputed tender of an amount exceeding the HOA superpriority lien, the Court reversed the district court's grant of summary judgment in favor of the lender. *Id.* The Court explained that the homeowner, who was given an opportunity to cure her default, failed to stay current on her revised payment plan causing additional amounts to become due. Thus, because the homeowner "remained in default after the $1,115.79 payment," the district court erred in setting aside the sale based upon the "perceived lack of default." *Id.* Significantly, the Court rejected the lender's argument that the homeowner's payment in excess of the superpriority lien caused the lien's satisfaction. The Court reasoned that "the record does not establish that the HOA in this case allocated or had an obligation to allocate the former homeowner's payment in that manner." *Id.* The Court also stated in a footnote that its prior holding in *Golden Hill* was premised on the assumption that a homeowner may satisfy an HOA's superpriority lien "but the issue was undeveloped in that it had not been timely and coherently briefed." *Id.* n.2.

In summary, to the extent a lender may prevail in a quiet title action based upon a homeowner's tender of an amount equal to HOA's superpriority lien, this result only obtains in narrow circumstances. In addition to tender of the proper amount, there must be evidence that the HOA, or its agent, was obligated to apply the payment to the superpriority portion of the HOA lien or that the HOA did in fact apply the payment in this manner. *Golden Hill*, 2017 WL 6597154, at *1; *see also Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, No. 2:15-cv-00692-GMN-CWH, 2018 WL 4704031, at *5 (D. Nev. Sept. 29, 2018) (concluding that *Golden Hill* requires a showing that a homeowner's delinquency payment was applied to an HOA's superpriority lien). Moreover, if the tendered payment is insufficient to cure the homeowner's default under a payment plan with the HOA, that payment will not extinguish the superpriority lien even if it exceeds that lien's amount. *SFR Invs. Pool 1, LLC*, 2018 WL 6609670, at *1.

Here, Plaintiff has put forth evidence that Borrower, prior to the foreclosure sale, made payments to HOA totaling $545.00, which is well in excess of HOA's $73.50 superpriority lien. (*See* NAS Records 125–153, 155–156, Ex. 11 to Pl.'s MSJ, ECF No. 112-11). HOA, however, has come forward with evidence demonstrating that Borrower's payments were insufficient to cure her default and stay current with the payment plan between NAS and Borrower. Shortly after HOA instituted foreclosure proceedings, NAS and Borrower agreed to a payment plan under which Borrower would pay "all delinquent assessments due" through eighteen consecutive monthly payments of $110.00. (*Id.* 121–122). Under the plan, Borrower's failure to "make full payments by the dates indicated" would result in the full amount being "immediately due and payable." (*Id.*). In July 2012, Borrower ceased making monthly payments and HOA notified Borrower that it would proceed with the foreclosure. (*See* HOA Letter to Borrower, Ex. 3 to HOA's MSJ at 28, ECF No. 111-3); (*see also* Pl.'s MSJ 5:12–17, ECF No. 112).

Because Borrower breached the payment plan and remained in default at the time of the sale, Plaintiff cannot prevail on the theory that Borrower's payments satisfied the superpriority lien. *SFR Invs. Pool 1, LLC*, 2018 WL 6609670, at *1 ("[T]he former homeowner remained in default even after the $1,115.79 payment. Accordingly, the district court erred in setting aside the ensuing foreclosure sale."). The Court recognizes, as Plaintiff asserts, that the sum of Borrower's payments dwarf the amount of HOA's $73.50 superpriority lien. (Pl.'s Resp. to Def.s' MSJs 16:18–28, ECF No. 120). Nevertheless, in its two pronouncements on the issue, the Nevada Supreme Court has articulated only limited circumstances under which a homeowner's payments may satisfy an HOA's superpriority lien on behalf of a lender. *See SFR Invs. Pool 1, LLC*, 2018 WL 6609670, at *1; *Golden Hill*, 2017 WL 6597154, at *1; *see also Bank of Am., N.A.*, 2018 WL 4704031, at *5. Because the Nevada Supreme Court has declined to extend *Golden Hill* to situations, like the present one, where a homeowner fails to cure its

own default under a payment plan, Borrower's failure to cure her default here precludes Plaintiff from recovery on this basis.

### 4. Equitable Grounds for Setting Aside the Sale

Plaintiff alternatively argues that the HOA foreclosure sale must be set aside on the following equitable grounds: (1) HOA made no attempt to obtain the best price for the Property; (2) HOA breached the mortgagee protection clause in its CC&Rs; (3) the notice of foreclosure sale misrepresented the date of the public auction; and (4) the statutory notices neither identify the existence of a superpriority lien nor the lien's amount. (Pl.'s MSJ 15:1–16:20, 17:24–20:15).

In determining the validity of an HOA's non-judicial foreclosure sale, the relevant inquiry is "whether the sale was affected by fraud, unfairness, or oppression." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646 (Nev. 2017). The burden of establishing that a foreclosure sale should be set aside rests with the party challenging the sale. *Id.* at 646.

#### a. Inadequate Sale Price

Plaintiff argues that the Court should equitably set aside the sale based upon the grossly inadequate sales price of the Property. (Pl.'s MSJ 17:22–23). According to Plaintiff, the Property sold for $5,100.00, representing 4.2% of its fair market value. (*Id.* 17:15–18).

"[M]ere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Shadow Canyon*, 405 P.3d at 648 (declining to adopt a bright-line rule to equitably set aside a sale "based solely on price."). Because a low sales price is insufficient as a matter of law, the Court turns to Plaintiff's additional arguments in favor of setting aside the sale.

### b. Mortgagee Protection Clause

Plaintiff argues that fraud, oppression, and unfairness are evidenced by HOA putting the "public on constructive notice in its CC&Rs . . . that the HOA's foreclosure sale would not disturb the first Deed of Trust." (Pl.'s MSJ 17:24–26). Plaintiff cites *ZYZZX2 v. Dizon*, No. 213-cv-1307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), for the proposition that an HOA's mortgagee protection clause in its CC&Rs, coupled with a disproportionately low sales price, is sufficient to invalidate a sale on equitable grounds. (Pl.'s MSJ 18:26–19:3).

The Nevada Supreme Court, however, has repeatedly held that an HOA's CC&RS, including those that provide for mortgagee protection, do not supersede the statutory structure of NRS Chapter 116. *See SFR Invs. Pool 1*, 334 P.3d at 418–19 ("'Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien.' . . . The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case.") (citation omitted); *Ikon Holdings*, 373 P.3d at 73–74 (holding that an HOA's CC&R provisions in contravention of NRS Chapter 116 "are superseded by statute and are thus negated."); *see also RLP-Vervain Court, LLC v. Wells Fargo*, No. 65255, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) (declining to consider certified question of "whether an association may validly subordinate its assessment lien" in its CC&Rs because "there is controlling Nevada precedent" on point).

Additionally, Plaintiff's failure to point to evidence of unfairness, other than the mortgagee protection clause itself, distinguishes the instant case from *ZYZZX2*. In that case, the HOA's agent sent the plaintiff a letter expressly providing assurances that the foreclosure would not impact the senior deed of trust. *See ZYZZX2*, 2016 WL 1181666, at *4. This "legally incorrect" mailing, in conjunction with the mortgagee protection clause, was enough to warrant invalidation of the sale. *Id.* at *5; *see Bayview Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No. 214-cv-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (explaining

that the decision in *ZYZZX2* was "rendered in light of the combination of the mortgage protection clause *and* the HOA's misleading mailings.") (emphasis added).

Here, in contrast, Plaintiff only points to HOA's alleged misrepresentations in its CC&Rs. (Pl.'s MSJ 18:25–26). As discussed above, this is insufficient as a matter of law to demonstrate unfairness.

### c. Content of Notices

Plaintiff asserts that foreclosure sale should be set because HOA, in its foreclosure notices, failed to specify the superpriority portion of its lien. (Pl.'s MSJ 19:23–26). As with Plaintiff's contentions regarding HOA's CC&Rs, this too is not enough to constitute fraud, oppression, or unfairness. As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). The Nevada Supreme Court has also rejected the argument that foreclosure notices must state the superpriority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc). Therefore, absent other evidence of fraud, oppression, or unfairness, an HOA's failure to identify the superpriority portion of the lien is not enough, as a matter of law, to justify setting aside the sale.

### d. Foreclosure Sale Postponement

Last, Plaintiff argues that HOA, in its notice of foreclosure sale, misrepresented the date on which the sale would take place. (Pl.'s MSJ 19:4–22). HOA responds that under NRS Chapter 116, "only oral notice of postponement [to] those in attendance of the sale is required." (HOA's Resp. 10:12–13). HOA further asserts that Plaintiff has failed to come forward with

"actual evidence of any procedural irregularities that prejudiced the deed of trust interest holder." (*Id.* 10:26–27).

NRS 107.082 expressly provides for oral postponement so long as the sale occurs on another date at the same time and location. *See* NRS 107.082(1). A new notice of sale must be mailed and recorded only if the sale has been postponed three times and the time and location have changed. NRS 107.082(2); *JED Prop. v. Coastline RE Holdings NV Corp.*, 343 P.3d 1239, 1241 (2015) ("Coastline would only be required to give notice under NRS 107.082(2) if the day, time, or place of the trustee's sale was changed subsequent to the third oral postponement.").

Here, the record is devoid of any suggestion that NAS ran afoul of NRS 107.082(1) by, for example, failing to give oral notice to bidders in attendance or postponing the sale to a later date at a different time and location. *See PHH Mortg. Corp. v. SFR Invs. Pool 1, LLC*, No. 72878, 2018 WL 4173160, at *1 (Nev. App. Aug. 10, 2018) ("[C]ompliance with [107.082] does not provide grounds to invalidate a foreclosure."). While Plaintiff is correct that the Nevada Supreme Court has stated a "foreclosure trustee's misrepresentation of the sale date" may rise to the level of fraud, unfairness, or oppression, *Shadow Canyon*, 405 P.3d at 648 n.11, Plaintiff has not produced evidence that the postponement inhibited Plaintiff in its efforts to protect its DOT, caused a devaluation in the Property's value, deterred bidders from attending the sale, or otherwise unduly prejudiced Plaintiff's interests. *See Deutsche Bank Nat'l Tr. Co. v. Saticoy Bay, LLC Series 11358 Cedar Log*, 422 P.3d 1231 (Nev. 2018) (unpublished) ("An oral postponement of a foreclosure sale is allowed under NRS 116.31164(1), and appellants failed to provide evidence that the postponement reduced the sales price of the property."); *HSBC Bank, USA, N.A. v. SFR Invs. Pool 1, LLC*, 408 P.3d 547 (Nev. 2017) (unpublished) ("HSBC presented no evidence that but for the delay it would have taken action to protect its interest or that the delay deterred bidders or devalued the property."). Accordingly, the Court is

unpersuaded that NAS's postponement of the sale date, as permitted by Nevada law, amounts to fraud, unfairness, or oppression. *JED Prop.*, 343 P.3d at 1241; *see also My Home Now, LLC v. Citibank, N.A.*, No. 2:14-cv-2019-JCM-VCF, 2018 WL 771317, at *8 (D. Nev. Feb. 7, 2018).

In summary, Plaintiff has not met its burden of demonstrating fraud, oppression, or unfairness such that equity demands that the sale be set aside. The Court therefore denies Plaintiff's Motion, as to its quiet title claim against SFR and HOA, and grants HOA's Motion as to this claim. SFR, on the other hand, has demonstrated that HOA and NAS complied with NRS Chapter 116 in all material respects. Accordingly, because the foreclosure was validly conducted pursuant to Nevada law, SFR's purchase of the Property at the sale extinguished Plaintiff's DOT. SFR is therefore entitled to summary judgment on its quiet title claim.

### e. SFR's Quiet Title Claim Against MERS

SFR also moves for summary judgment against MERS on the basis that the foreclosure sale extinguished the SDOT. (SFR's MSJ 26:17–22). Plaintiff asserts that MERS does not possess an adverse interest in either the DOT or SDOT because it has assigned away its interest in both to other parties. (Pl.'s Resp. to SFR's MSJ 3:22–23).

As discussed above, there is no genuine issue of material fact regarding NAS and HOA's compliance with NRS Chapter 116. Therefore, because an HOA's proper foreclosure on its superpriority lien wipes out junior liens, MERS's purported SDOT was extinguished along with Plaintiff's DOT. *See Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 132 Nev. Adv. Op. 5, 366 P.3d 1105, 1116 (2016) ("And if the association forecloses on its superpriority lien portion, the sale also would extinguish other subordinate interests in the property.") (citing *SFR Invs.*, 334 P.3d at 412–13); *see also* Restatement (Third) of Prop.: Mortgages § 7.1 (1997) ("A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law."). Accordingly, to the extent MERS asserts any adverse interest in the

Property, SFR's interest is superior. The Court therefore grants SFR summary judgment on its quiet title claim against MERS.

### B. Unjust Enrichment

SFR seeks summary judgment on Plaintiff's unjust enrichment claim arguing that SFR has not accepted or retained any benefit that belongs to Plaintiff in equity. (SFR's MSJ 26:9–15). SFR further argues that, assuming it prevails on its quiet title claim, SFR was fully within its rights to use the Property as it desired upon acquiring it at the foreclosure sale. (*Id.* 26:11–13). Plaintiff responds that its payments of taxes and insurance on the Property following the sale were made to protect its interest in its DOT. (Pl.'s Resp. to SFR's MSJ 19:23–17, ECF No. 120). Therefore, according to Plaintiff, its payments conferred a benefit upon SFR by relieving SFR of those payment obligations. (*Id.* 20:5–10).

Under Nevada law, unjust enrichment is an equitable doctrine that allows recovery of damages "whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981). To prevail on an unjust enrichment claim, a plaintiff must prove the following three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof. *Takiguchi v. MRI Intern., Inc.*, 47 F. Supp. 3d 1100, 1119 (Nev. 2014).

Here, Plaintiff fails to point the Court to any evidence substantiating its claimed payments towards the Property. Therefore, Plaintiff cannot demonstrate the existence of a benefit bestowed upon SFR. *See JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 200 F. Supp. 3d 1141, 1177 (D. Nev. 2016) ("[Plaintiff"] has produced no evidence of such payments; thus, it cannot establish the first element of its unjust enrichment claim[.]"); *see also Christiana*

*Tr. v. SFR Invs. Pool 1, LLC*, No. 216-cv-00684-GMN-CWH, 2018 WL 6603643, at *8 (D. Nev. Dec. 17, 2018). Accordingly, absent such evidence, Plaintiff's unjust enrichment claim cannot withstand SFR's Motion for Summary Judgment.

### C. SFR's Request for Injunctive Relief

Finally, with respect to SFR's request for injunctive relief against Plaintiff and MERS pending this Court's determination of the parties' respective rights and interests as to the Property, (*see* Answer 18:25–19:12, ECF No. 34), the Court's grant of summary judgment in SFR's favor on its quiet title claim moots this cause of action, and it is therefore dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 112), is **DENIED**.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 113), is **GRANTED**.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 111), is **GRANTED**.

**IT IS FURTHER ORDERED** that SFR's Motion to Strike, (ECF No. 118), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that SFR shall file a status report within fourteen (14) days of this Order stating how it intends to proceed on its slander of title claim. Failure to file a status report by this deadline will result in the Court dismissing this claim with prejudice and closing the case.

**DATED** this __22__ day of January, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge